AMY J. BETZ, APPELLEE, V. WILLIAM J. BETZ, APPELLANT.

575 N.W. 2d 406

Filed March 27, 1998.    No. S-97-621.

Joseph S. Daly and Kelly K. Brandon, of Sodoro, Daly & Sodoro, for appellant.

Van A. Schroeder, of Bertolini, Schroeder & Blount, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

McCORMACK, J.

This appeal arises out of a petition for dissolution of marriage filed by appellee, Amy J. Betz, against appellant, William J. Betz. The district court for Sarpy County, Nebraska, granted custody of the couple's minor child, Emma Betz, to appellee, and appellant filed this appeal. Appellant further appeals the district court's calculation of proper visitation and child support. On our own motion, we removed the matter to this court under our authority to regulate the caseloads of the Nebraska Court of Appeals and this court. We affirm the decision of the district court.

## FACTUAL BACKGROUND

Appellant and appellee were married in July 1994 in Council Bluffs, Iowa. Over the course of their 3-year marriage, the cou-

ple encountered numerous problems, which they attempted to resolve. In August 1996, however, appellee filed for divorce. The marriage produced one child, Emma. On its own motion, the district court appointed Attorney Michael Heavey as guardian ad litem.

At trial, appellee testified that following the birth of the minor child, she was the family's primary caregiver as appellant was usually at the bar the couple ran for 12 hours a day, 7 days a week. Appellee further testified that appellant provided almost no care for the minor child prior to the dissolution of their marriage as he was always at work. Appellee testified that appellant often came home from the bar smelling of alcohol and that he would then go to sleep until 1:30 p.m. the next day, a mere hour before he had to go back to the bar to work. Appellee further testified that following the parties' separation, on several occasions appellant was inebriated when he was to have visitation with the minor child. On four occasions, appellee was forced to take the minor child to day care, rather than leave the minor child with appellant because she felt he was too drunk to care for her. Testimony corroborative of appellee's testimony was given by the couple's day-care provider, by appellee's mother, and by appellee's Alcoholics Anonymous sponsor.

Appellant testified that he had a good relationship with the minor child and that he was better suited to care for her than appellee because his schedule allowed him to be free during the day. As such, the minor child could be with a parent during the day rather than in day care. Furthermore, appellant testified that it would be problematic for him to see the minor child on another visitation schedule due to his work schedule at the bar.

Gary N. Lehmer, the couple's marriage counselor, testified that both parents seemed fit and proper parents. Lehmer further testified that it was his experience that children should spend as much time with both parents as possible. He concluded by stating that the child would be better off being placed with a parent than with a babysitter. On cross-examination, however, Lehmer admitted that this was a general proposition and that it was not specifically tailored to appellant and appellee's situation.

At the close of appellant's case in chief, appellant attempted to call the guardian ad litem to testify that the minor child

would be better served by giving custody to appellant. Heavey, the guardian ad litem, had cross-examined witnesses on behalf of the minor child throughout the course of earlier testimony. The court sustained appellee's objection to Heavey's testimony on the basis that the appointment of the attorney created an attorney-client relationship between the minor child and Heavey which would be violated by his testimony. Appellant then attempted to enter Heavey's report into evidence to which appellee objected, and the court sustained the objection on hearsay grounds. Heavey's report stated his opinion that joint custody be awarded if the parties could so agree but, if not, that custody go to appellee with appellant having priority over any other day-care providers.

The court then granted the petition for dissolution and awarded custody to appellee. The trial judge expressed his belief that the current system of visitation was in the best interests of the child because the child had become accustomed to the schedule during the parents' separation. The court then awarded appellee child support in the amount of $638 per month, based upon appellant's military pension and his earning capacity.

## ASSIGNMENTS OF ERROR

Appellant assigns as error that the trial court (1) abused its discretion in refusing to allow the court-appointed guardian ad litem to testify and in awarding appellee custody of the parties' minor child, (2) abused its discretion in its award of visitation to appellant, and (3) abused its discretion in calculating the parties' respective monthly income and child support.

## STANDARD OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial judge, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Palmer v. Palmer*, 249 Neb. 814, 545 N.W.2d 751 (1996). Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Abboud v. Papio-Missouri River*

*NRD*, 253 Neb. 514, 571 N.W.2d 302 (1997); *Bank of Papillion v. Nguyen*, 252 Neb. 926, 567 N.W.2d 166 (1997); *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997); *Brown v. Wilson*, 252 Neb. 782, 567 N.W.2d 124 (1997). The proper amount of child support is determined not necessarily by a parent's earnings, but by a parent's earning capacity. *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996).

## ANALYSIS

### ROLE OF COURT-APPOINTED GUARDIAN AD LITEM

The fact that in this case the court-appointed guardian ad litem also participated in the trial by performing the functions of an attorney points to the confusion that has existed between the role of a guardian ad litem and the role of a court-appointed attorney.

A court, under its inherent equitable powers, may appoint a guardian ad litem. A guardian ad litem may or may not be an attorney. The guardian ad litem's duties are to investigate the facts and learn where the welfare of his or her ward lies and to report these facts to the appointing court. These reports to the court, whether in written form or testimony by the guardian ad litem, including hearsay, shall be subject to the Nebraska rules of evidence. A guardian ad litem may be an attorney, but an attorney who performs the functions of a guardian ad litem does not act as an attorney and is not to participate in the trial in an adversarial fashion such as calling or examining witnesses or filing pleadings or briefs. If the guardian ad litem feels that he or she needs an attorney, the guardian ad litem should apply to the appointing court for permission to retain an attorney to represent the guardian ad litem.

An attorney appointed under Neb. Rev. Stat. § 42-358 (Cum. Supp. 1996) is an advocate for the minor child and is *not* a guardian ad litem. The court-appointed attorney shall act as the attorney for the minor child, but shall not testify in the proceedings. This distinction between a guardian ad litem and an attorney appointed under § 42-358 is mandated under Canon 5, DR 5-102(A), of the Code of Professional Responsibility. DR 5-102(A) states:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm ought to be called as a witness on behalf of his or her client, the lawyer shall withdraw from the conduct of the trial and his or her firm, if any, shall not continue the representation in the trial . . . .

The Court of Appeals in *Joyce S. v. Frank S.*, 6 Neb. App. 23, 33, 571 N.W.2d 801, 809 (1997), stated:

> [T]he proper function of a guardian ad litem is to thoroughly investigate the facts to learn where the welfare of his or her ward lies, and then, if the issues necessary for the protection of that ward are not properly framed by appropriate pleadings previously filed by the child's parents, the guardian ad litem should file a report or pleading that will bring to the court's attention those issues. Furthermore, if an investigation by the guardian leads the guardian to conclude that the attorneys for the parties are not going to introduce the relevant and admissible evidence necessary to protect the interests of the ward, the guardian ad litem should do so and then by argument suggest to the court what the law and the evidence dictate would be in the best interests of the ward. We think that under the adversarial system, the duty of the guardian ad litem is to be sure the judge has the full facts and the correct law, accompanied by helpful argument, so that the judge may make a correct decision. In short, the primary function of the guardian ad litem is to give the judge the necessary information by way of admissible evidence so the judge may issue an order which is in the best interests of the ward and which will be upheld on appeal. Of course, if the court does not issue such an order, the guardian ad litem should appeal.

> We suggest that the primary function of the guardian ad litem's report is for the guardian to demonstrate to the judge that the guardian has performed his or her duty. Frequently, when a guardian ad litem's report does not contain objectionable hearsay, it is an efficient means of communicating the facts that the guardian has learned to the parties and to the judge, if properly admitted into evi-

dence, but a report is not somehow made admissible because it was prepared by a guardian ad litem appointed by a court pursuant to a statute. Hearsay within such reports remains hearsay.

The court went on to conclude:

> In this case, the guardian ad litem was allowed to opine that it was in Katie's best interests that Frank's parental rights be terminated. The record clearly shows that opinion is based upon hearsay that would not be admissible in court. We see no merit in giving credence to the opinion of a guardian when that opinion is based in large measure on the very hearsay that our legal tradition holds to be improper. Therefore, in our de novo review we shall consider only that portion of the guardian's testimony and evidence that is relevant and admissible.

*Id.* at 33-34, 571 N.W.2d at 809. That portion of *Joyce S. v. Frank S., supra,* that a guardian ad litem may file pleadings, introduce relevant and admissible evidence, argue to the court, or act in the role of an attorney, is hereby disapproved.

Even though there is no clear statutory statement of what a guardian ad litem is, the duties and responsibilities of a guardian ad litem are not coextensive with those of an attorney who represents the minor. See *Orr v. Knowles,* 215 Neb. 49, 337 N.W.2d 699 (1983).

One can argue that the Nebraska Juvenile Code, Neb. Rev. Stat. § 43-272.01(2)(e) (Cum. Supp. 1996) allows a guardian ad litem to present evidence and witnesses and cross-examine witnesses at all evidentiary hearings. This statute, however, only applies to juvenile cases. Whether this juvenile statute is constitutional is something that we are not called upon to decide in this case.

We, therefore, hold prospectively that from June 1, 1998, forward, when making an appointment of a guardian ad litem or an attorney to represent the interests of the minor pursuant to § 42-358 in forums other than the juvenile court, the appointing court, in the order making the appointment, shall specify whether the person appointed is to act as a guardian ad litem or as an attorney pursuant to § 42-358. One person may not serve

in both capacities. The appointed person shall, after the date of the appointment, perform his or her duties as outlined above.

## VISITATION AND CHILD SUPPORT

Appellant's second and third assigned errors revolve around the trial court's determinations regarding visitation of the minor child and child support. As stated earlier, child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial judge, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Palmer v. Palmer*, 249 Neb. 814, 545 N.W.2d 751 (1996). We find no abuse of discretion in reviewing the decision of the trial court regarding appellant's visitation. There was ample evidence that appellant did very little in the way of caring for the minor child prior to the dissolution of his marriage. Furthermore, despite the convenience offered by appellant's schedule, evidence in the record clearly questions appellant's sobriety. Appellee testified that on four occasions when appellant was to have the minor child for visitation, appellee was forced to take the minor child to a day-care provider due to appellant's inebriation. Furthermore, it was brought out on cross-examination that appellant had recently been arrested for driving while under the influence. Based upon these facts and the fact that the minor child had become accustomed to her visitation schedule during the temporary separation, the decision of the trial court is neither untenable nor improper and does not amount to an abuse of discretion. As we find no abuse of discretion in the trial court's visitation schedule, appellant's second assigned error is without merit.

Appellant's third assigned error revolves around the amount of child support awarded to appellee. Appellant argues that the only evidence as to his income was his military pension, and thus the court improperly imputed income to him from his operation of the bar. However, there was ample evidence that appellant worked a significant number of hours at the bar and restaurant he owned and operated. As stated above, the proper amount of child support is determined not necessarily by a parent's earnings, but by a parent's earning capacity. *Smith-Helstrom v.*

*Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996). We conclude that the trial court did not err in determining the amount of child support from appellant's earning capacity, rather than his earnings. Appellant is an able-bodied, 51-year-old man who has demonstrated that he is able to work.

## CONCLUSION

Appellant's first assignment of error is without merit for the reasons stated above. Appellant's second and third assigned errors are without merit, as these matters are within the discretion of the trial court. As to the second assignment of error, visitation, there was ample evidence to support the trial court's ruling. With regard to the third assignment of error, child support, it appears that the appellant works long hours as indicated in the record, yet claims that he has accrued no income from his labor to contribute to the support of the minor child. It is for this reason that this court allows a district court to use a party's earning capacity, rather than the party's earnings, to determine child support obligations. No abuse of discretion can be attributed to the trial court's determination regarding child support.

AFFIRMED.